JOSEPH ELIAS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20482. Promulgated September 27, 1929.

*Morris D. Kopple, Esq.*, and *Herbert D. Cohen, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

OPINION.

Smith : First, we will consider the statute of limitations question. The petitioner contends that the collection of any additional tax found to be due for the year 1920 is barred; that the effect of the waiver above set out was to extend the time for assessment only and not the time for collection, which expired March 15, 1926, five years after the return was filed. We think that the petitioner's contention is without merit. Before the expiration of the statutory 5-year period for assessment and collection the petitioner and the respondent entered into a written consent, as provided by section 278 (c) of the Revenue Act of 1924, for a later assessment. Prior to the expiration of the time for assessment as extended by the agreement the deficiency notice herein was mailed to the petitioner, and within 60 days from the date thereof the petition was filed. Under the terms of the written consent the period for assessment was extended from December 31, 1926, by the number of days transpiring between the date of mailing the deficiency notice and the date of final decision of the Board. It is futile to argue that the statute makes provision for the preservation of the respondent's right to assess and at the same time forbids the collection of the tax. Such an anomaly may not be imputed to a taxing statute. The right of the respondent to assess the additional tax found to be due for 1920 still exists and under the provisions of section 278 (d) of the Revenue Acts of 1924 and 1926 collection may be made within 6 years from the date of assessment. See *Loewer Realty Co.* v. *Anderson*, 31 Fed. (2d) 268; *Florsheim Bros. Dry Goods Co.* v. *United States*, 29 Fed. (2d) 895; *T. D. Floyd*, 11 B. T. A. 903.

We think that it was error for the respondent to disallow the deduction claimed for traveling expenses in the amount of $14,059.66. The petitioner's president, Joseph Elias, testified that he, personally, incurred all of the expenses on petitioner's behalf as a necessary part

of its business operations, that is, in traveling to and from the various glass factories located in Ohio, Pennsylvania, Virginia, West Virginia, and other States for the purpose of purchasing material for the petitioner. He testified that he kept a memorandum account of the monies expended on such trips which, for the year 1920, totaled $14,059.66. Near the close of the year 1920 the petitioner, by its board of directors, approved the expenditures and authorized repayment to its president of the full amount. From the evidence the expenditures do not seem unreasonable in amount, nor does there appear to be any other reason for questioning the validity of petitioner's claim for the deduction.

This leaves the question of inventories. The statute makes no specific provision either as to when or in what manner inventories shall be made. The statute does provide in section 203 of the Revenue Act of 1918, that inventories shall be taken whenever, in the discretion of the Commissioner, it is necessary in order clearly to determine income upon such basis as the Commissioner may prescribe as conforming as nearly as may be to the best accounting practice and as most clearly reflecting income. Pursuant to the statute the Commissioner has promulgated regulations requiring inventories under certain conditions of doing business and prescribing that such inventories be valued at cost, or cost or market whichever is lower. See articles 1582, 1583, 1584, Regulations 45. We have held that these regulations conform to the statute and are reasonable. *C. E. Longley Co.*, 4. B. T. A. 246; *O. A. Steiner Tire Co.*, 9 B. T. A. 1289. From the evidence before us we are unable to determine definitely what method of valuation the petitioner employed in making its inventories. To all appearances the method employed conformed to neither of those required by the Commissioner's regulations. Joseph Elias, who personally valued the inventory for petitioner, on being asked what basis he used in making his valuations, testified as follows:

* * * We have to take a practical idea as to what the market is, and what we can sell it for and the present situation that surrounds us as to what we can market the glass for, and it is almost an understanding, or, rather, I would say it is a prevailing price through the market to the trade.

Q. Assume that you can buy glass, say for $100, a certain quantity; it comes up at the inventory period that there is glass at that method of valuation would amount to $100; is that based upon the then market for the glass, that is the cost of replacement, or is it the sales price of the glass?

A. On the prevailing price that $100 may be figured on 110, it may be figured at $60.00 or $75.00; it all depends upon what the conditions of the market are at that time.

\* \* \* \* \* \* \*

A. Well, we inventory the glass according to the quantity that we have in stock that has been rejected from time to time, and accumulate it, and then the market conditions, what we have to sell it for, and that is all we can do,—if we take anything else into consideration that is not practical, it would be only fictitious * * *.

Q. Well, supposing that ten thousand square feet of glass was of a kind that had appreciated in value tremendously; how would that be taken into the inventory?

A. It would be taken into the inventory at the appreciated value in a reasonable way.

*     *     *     *     *     *     *

Q. And then your ten per cent would be taken off of that appreciated price?

A. On account of rejections, yes, sir.

Q. Is that the way the company has consistently taken its inventories in years past?

A. Yes, sir.

*     *     *     *     *     *     *

Q. * * * we will say for 1920, at the end of 1920 you can sell this glass for a dollar and it costs you fifty cents; what did you take it at in your inventory?

A. We would take it then twenty-five per cent of the dollar; we base our cost, our overhead around between twenty-five and thirty per cent.

The petitioner was entitled to take its inventory at cost, or cost or market whichever was lower. Apparently the bulk of the petitioner's inventory was valued at market, as determined by Joseph Elias, less certain discounts for depreciation, overhead and other purposes. It is not shown whether this so-called market value was less or greater than cost. Clearly this is not a proper basis for valuing inventories. The respondent has made adjustments in both the closing and opening inventories for 1920 and, in the absence of proof of error in these adjustments, the respondent must be sustained upon this issue.

*Judgment will be entered under Rule 50.*